**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-02497-CMA-MJW

BRITTANY MOORE, a/k/a BRITTANY LANDIS,
KAITLIN ROSE LANDIS,
KIRSTIN RAE LANDIS, and
KAYMEN RENEE LANDIS, Minors,
by and through their next friend, BRITTANY MOORE,

      Plaintiffs,

v.

TOWN OF ERIE, COLORADO, and
ERIE POLICE OFFICER JAMIE CHESTER (Badge E-23), in his official
and individual capacities,

      Defendants.

---

**ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS**

---

This matter is before the Court on Defendants' Motion to Dismiss. (Doc. # 8.)

Plaintiffs Brittany Moore, and minors through Brittany Moore, Kaitlin Rose Landis, Kirstin

Rae Landis, and Kaymen Renee Landis (collectively, "Plaintiffs") bring this suit against

the Town of Erie and Erie Police Officer Jamie Chester (collectively, "Defendants")

under Title 42 U.S.C. § 1983 and Colorado state law claims of intentional infliction of

severe emotional distress and willful and wanton negligence. (Doc. # 3.) Jurisdiction

is proper pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 under federal question

jurisdiction. (*Id.* at 2.)

## I.  <u>BACKGROUND</u>

On May 10, 2011, at approximately 7:56 p.m., Plaintiff Moore called 911 to report a threatening phone call she received and requested that an officer come to her property for her protection.  (Doc. # 3, ¶ 20.)  Defendant Chester responded to the call, but initially went to the wrong address.  (*Id.*, ¶¶ 21, 24.)  Upon realizing his mistake, Defendant Chester proceeded to Plaintiff Moore's residence, which was next door.  (*Id.*, ¶ 24.)  At the time Defendant Chester arrived at the wrong address, Plaintiff Moore was standing on her front porch.  (*Id.*, ¶ 25.)  Plaintiff Moore's two dogs, one of which was a five-year-old German Shepherd named "Ava," approached Defendant Chester as he walked towards Plaintiffs' property.  (*Id.*, ¶ 33.)  Upon seeing the dogs approaching him, Defendant Chester began to walk backward with his hand on his holstered gun.  (*Id.*, ¶ 35.)  The dogs continued to approach Defendant Chester, who drew his gun and shot and killed Ava.  (*Id.*, ¶ 51.)

On September 19, 2012, Plaintiffs filed a Complaint and Jury Demand alleging four claims for relief.  (Doc. # 3.)  First, Plaintiffs assert that Defendant Chester violated their Fourth Amendment right by shooting and killing Ava without any reasonable justification.  (*Id.*, ¶ 90.)  Second, Plaintiffs claim that the Town of Erie and its Police Department failed to instruct, supervise, control, equip, train, or discipline police officers in their duties to refrain from unlawfully killing dogs.  (*Id.*, ¶ 102.)  Third, Plaintiffs allege intentional infliction of severe emotional distress against Defendant Chester for shooting and killing Ava.  (*Id.*, ¶ 120.)  Lastly, Plaintiffs assert willful and wanton negligence against Defendant Chester for shooting and killing Ava.  (*Id.*, ¶ 123.)  Defendants filed

a Motion to Dismiss on September 12, 2012 (Doc. # 8), Plaintiffs filed a response on

October 18, 2012 (Doc. # 10), and Defendants replied on November 11, 2012 (Doc.

# 11).

## II.  <u>STANDARD OF REVIEW</u>

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests

the formal sufficiency of a complaint.  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201

(10th Cir. 2003).  A complaint will survive such a motion if it contains "enough facts to

state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

554, 570 (2007).  For a motion to dismiss, "[t]he question is whether, if the allegations

are true, it is plausible and not merely possible that the plaintiff is entitled to relief under

the relevant law."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192

(10th Cir. 2009).  "The plausibility standard is not akin to a probability requirement, but it

asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept all the well-pleaded

allegations of the complaint as true and must construe them in the light most favorable

to the plaintiff."  *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991).  Nevertheless,

a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  "The

court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is

legally sufficient to state a claim for which a relief may be granted."  *Miller v. Glanz*, 948

F.2d 1562, 1565 (10th Cir. 1991).

### III. <u>DISCUSSION</u>

In their motion to dismiss, Defendants assert that Plaintiffs fail to state a claim

upon which relief may be granted on each of their four claims.  (Doc. # 8 at 1.)  The

Court will address each claim in turn.

**A.     FOURTH AMENDMENT VIOLATION CLAIM AGAINST DEFENDANT
         CHESTER**

Title 42 U.S.C. § 1983 provides a civil cause of action for individuals who are

deprived of "any rights, privileges, or immunities secured by the Constitution and laws"

by a person acting "under color of law."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

147, 150 (1970).  Defendant Chester first contends that Plaintiffs failed to state a claim

under which relief may be granted because he did not violate a constitutional right.

(Doc. # 8 at 3.)

1.   <u>Are Dogs "Effects" Within the Meaning of the Fourth Amendment?</u>

The Fourth Amendment to the United States Constitution provides that "[t]he right

of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend.

IV.  The Supreme Court "has treated the term 'effects' as being synonymous with

personal property."  *Altman v. City of High Point*, 330 F.3d 194, 202 (4th Cir. 2003)

(citing *Bond v. United States*, 529 U.S. 334, 336–37 (2000); *United States v. Jacobsen*,

466 U.S. 109, 114 (1984); *United States v. Place*, 462 U.S. 696, 701 (1983); *Nicchia v.

New York*, 254 U.S. 228, 230 (1920); *Sentell v. New Orleans & C.R. Co.*, 166 U.S. 698,

701 (1897) (at common law a dog owner could bring an action of trover for conversion of a dog)).  Although the Tenth Circuit has not addressed this issue, every circuit that has visited the issue has uniformly concluded that dogs are effects subject to the protection of the Fourth Amendment.[1]  *See Carroll v. Cnty. of Monroe*, 712 F.3d 649, 649 (2d Cir. 2013) (unreasonable killing of a companion animal constitutes an unconstitutional seizure of personal property under the Fourth Amendment); *Maldonado v. Fontanes*, 568 F.3d 263, 271 (5th Cir. 2009) ("The killing of a person's pet dog or cat by the government without the person's consent is also a seizure within the meaning of the Fourth Amendment."); *Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008) (dogs are effects and the killing of a companion dog constitutes a seizure); *Altman v. City of High Point*, 330 F.3d 194, 203 (4th Cir. 2003) ("[W]e hold that the plaintiffs' privately owned dogs were 'effects' subject to the protection of the Fourth Amendment."); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3rd Cir. 2001) (killing of a person's dog by a law enforcement officer constitutes a seizure); *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994) ("A dog is an 'effect' or 'property' which can be seized.") *overruled on other grounds by Robinson v. Solano Cnty.*, 278 F.3d 1007 (9th Cir. 2002); *Lesher v. Reed*, 12 F.3d 148, 150–51 (8th Cir. 1994) (dogs are property subject to Fourth Amendment seizure requirements); *see also Scharfeld v. Richardson*, 133 F.2d 340, 341 (D.C. Cir. 1942) ("It is an established principle of the common law that a dog is personal property."). Indeed, in Colorado, dogs enjoy the status of qualified property.  *Thiele v. City and Cnty.*

---

[1] Similarly, Senior Judge Matsch, of this District has found that an officer's killing of a plaintiffs' dog constituted a "loss of property" under the Fourth Amendment.  (Case No. 10-cv-01895-RPM, Doc. ## 52, 53 at 1–2.)

*of Denver*, 312 F.2d 786, 789 (Colo. 1957); *see further Colorado Dog Fanciers, Inc. v. City and Cnty. of Denver By & Through City Council*, 820 P.2d 644, 653 (Colo. 1991) (dogs are property and their taking is subject to the police power of the state); Colo. Rev. Stat. § 25–4–601 (defining an "owner" as "any person who has a right of property in a dog, cat, [or] other pet animal.")  Therefore, this Court concludes that "Ava" was an effect as that term was used in the Fourth Amendment.

    2.  <u>Does the Killing of a Dog Constitute a "Seizure" under the Fourth Amendment</u>?

       Having found that Ava was an "effect" subject to the protection of the Fourth Amendment, the Court must next consider whether Defendant Chester's killing of Plaintiffs' dog constituted a "seizure" under the Fourth Amendment.  The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'" *Jacobsen*, 466 U.S. at 113.  "A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Id.*  Destroying property meaningfully interferes with an individual's possessory interest in that property.  *Id.* at 124–25.  Therefore, when Defendant Chester killed Plaintiffs' dog, he "seized" Plaintiffs' "effects."  *See Carroll*, 712 F.3d at 649 (unreasonable killing of a companion animal constitutes an unconstitutional seizure under the Fourth Amendment); *Viilo*, 547 F.3d at 710 (same); *Maldonado*, 568 F.3d at 271 (same); *Altman*, 330 F.3d at 205 ("[W]hen the officers destroyed the dogs, they 'seized' plaintiffs' 'effects.'"); *Brown*, 269 F.3d at 210; *Fuller*, 36 F.3d at 68 ("The killing of the dog is a destruction recognized as a seizure under the Fourth Amendment.").

In support of Defendant Chester's argument that Plaintiffs do not have standing to assert a Fourth Amendment violation against him, he absurdly contends "an individual does not have standing to assert Fourth Amendment rights on behalf of another." (Doc. # 8 at 3–4.) However, the crux of Plaintiffs' claim is that Defendant Chester violated **their** rights when he unreasonably seized their property, not that Ava herself has Fourth Amendment rights. *See Kimcheloe v. Caudle*, No. A-09-CA-010LY, 2009 WL 3381047 at *6 (W.D. Tex. Oct. 16, 2009) (finding defendants' argument—that plaintiffs' Fourth Amendment claim is without merit because "a dog has no 4th Amendment rights" and "[a]s a matter of law, there can never be excessive force under the 4th Amendment applied to a dog"—misplaced because plaintiffs alleged a claim on behalf of themselves and not their dog); *see also Fuller*, 36 F.3d at 68 ("[T]he destruction of property by state officials poses as much of a threat, if not more, to people's right to be 'secure in their effects' as does the physical taking of them.").[2]

---

[2] Defendant Chester also argues that he did not seize Plaintiffs' property because he did not intend to gather evidence to use against Plaintiff Moore. (Doc. # 8 at 5.) Defendant Chester cites to *Graham v. Connor*, 490 U.S. 386 (1989), which, under even the most liberal reading does not stand for the proposition Defendant Chester asserts. Instead, in that case, the Supreme Court declared that § 1983 excessive use of force claims are properly analyzed as violations of the Fourth Amendment, rather than under substantive due process. *Id.* at 398. Likewise, Defendant Chester cites to *Rakas v. Illinois*, 439 U.S. 128 (1978) to claim that "a person is aggrieved under the Fourth Amendment when evidence is illegally seized and with the intent of using it against them in a future legal action." While this may be true, it is not the only circumstance in which a person can assert his or her Fourth Amendment rights. *See Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 68 (1992) (owners of a mobile home destroyed by a sheriff appropriately brought their claim under § 1983 for a deprivation of property protected by the Fourth Amendment). Defendant Chester confuses the exclusionary rule in criminal matters with a civil claim for deprivation of property under § 1983.

Plaintiffs have stated a viable claim for deprivation of property under the Fourth Amendment.  Thus, the motion to dismiss on the Title 42 U.S.C. § 1983 Fourth Amendment violation claim against Defendant Chester is denied.[3]

**B.   MUNICIPAL LIABILITY CLAIM PURSUANT TO 42 U.S.C. § 1983**

The Town of Erie argues that Plaintiffs failed to state a claim as to their second claim because Plaintiffs did not establish an underlying constitutional deprivation under the Fourth Amendment.  (Doc. # 8 at 5.)  The Court finds that Plaintiffs did not establish the requisite elements of a municipal claim against the Town of Erie.

It is well-settled that to establish a municipal liability claim pursuant to Title 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the existence of a municipal policy or custom, and (2) a direct causal link between the injury alleged and a municipal policy or custom. [4]  *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).  A "municipal policy or custom" may include the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."  *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989) (A failure to train can support a claim against a municipality if "the need for more or different training is so obvious, and

---

[3] The Court declines to address Defendant Chester's arguments regarding qualified immunity, which he raises for the first time in his reply.  However, he is free to raise these arguments at the summary judgment stage.

[4] Citing to *Holland ex. re. Overdorff v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001), the Town of Erie asserts that Plaintiffs must establish "an affirmative link between the training, policies, and supervision provided by the Town and the constitutional deprivation alleged in the Complaint."  (Doc. # 8 at 5.)  However, *Holland* addresses supervisory liability in a § 1983 action, 268 F.3d at 1187, and does not address municipal liability, which is the basis of Plaintiffs' claim.  (Doc. # 10 at 9.)

the inadequacy is so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent" to the need for additional training.); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)).

A municipality may be held liable under § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. *Barney*, 143 F.3d at 1307; *see Bryson*, 627 F.3d at 788 (a municipality may not be held liable under § 1983 solely based on its status as an employer). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390–91. "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at 391. "Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal." *Id.*

In their Complaint, Plaintiffs allege that Defendant Chester previously shot and killed another family pet (Doc. # 3, ¶ 55), and that the Town of Erie consciously or deliberately chose to disregard the risk of harm in failing to implement a policy after the first pet was killed (Doc. # 10 at 10). One previous instance, however, is not sufficient to prove a municipal policy or custom. *See City of Canton*, 489 U.S. at 391 ("[A]dequately trained officers occasionally make mistakes; the fact that they do says

little about the training program or the legal basis for holding the city liable.").  The Court

finds that this one prior incident is insufficient to provide the Town of Erie with the actual

or constructive notice that it needed to implement a policy or training program.  The

Town of Erie was not "deliberately indifferent" to the need for additional training, thus,

the Court grants the motion to dismiss on this claim.

## C.    STATUTE OF LIMITATIONS FOR STATE LAW CLAIMS

A claim is subject to dismissal for failure to state a claim for relief if the

allegations in the complaint show that relief is barred by the applicable statute of

limitations.  *Jones v. Bock*, 549 U.S. 199, 215 (2007).  The defense of statute of

limitations may be resolved upon a motion to dismiss where the complaint shows on its

face that the action has not been instituted within the statutory period.  *See Aldrich v.

McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) ("While the statute

of limitations is an affirmative defense, when the dates given in the complaint make

clear that the right sued upon has been extinguished, the plaintiff has the burden of

establishing a factual basis for tolling the statute.")

Defendant Chester argues that Plaintiffs' claims for intentional infliction of

emotional distress and willful and wanton negligence should be dismissed as barred by

the statute of limitations.  (Doc. # 8 at 6.)  Colo. Rev. Stat. § 13–80–103(1)(c) provides,

in pertinent part, that "[a]ll actions against sheriffs, coroners, police officers, firefighters,

national guardsmen, or any other law enforcement authority" shall be "commenced

within one year after the cause of action accrues."  Plaintiffs filed their complaint on

July 5, 2012, and Defendant Chester killed their dog over a year earlier, on May 10, 2011.  (Doc. # 10 at 13.)

However, Plaintiffs argue that the two-year limitation of Colo. Rev. Stat. § 13–80–102 applies to these claims because they are "actions upon liability created by a federal statute."  § 13–80–102 states, in pertinent part, that "civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within two years after the cause of action accrues" for tort actions, including negligence, and "actions upon liability created by a federal statute where no period of limitation is provided in said federal statute."  Colo. Rev. Stat. § 13–80–102(1)(a)(g).  Although Colo. Rev. Stat. § 13–80–102 governs the statute of limitations for § 1983 claims, Defendant Chester asserts his statute of limitations defense only as to Plaintiffs' intentional infliction of severe emotional distress and willful and wanton negligence claims, which arise under Colorado law, rather than § 1983.  *See Nicholas v. Boyd*, 317 F. App'x 773, 777 (10th Cir. 2009) (citing *Blake v. Dickason*, 997 F.2d 749, 750–51 (10th Cir. 1993)); *Nieto v. State*, 952 P.2d 834, 844 (Colo. App. 1997) *reh'g denied*, *cert. granted*, *aff'd in part*, *rev'd in part on other grounds*, *State v. Nieto*, 993 P.2d 493 (Colo. 2000) (In Colorado the applicable statute of limitations for § 1983 actions, even those asserted against enforcement officers, is the two-year limitation period of § 13–80–102(1)(g).).

Moreover, applying rules of statutory construction, the Tenth Circuit has held that the one-year limitation period in Colo. Rev. Stat. § 13–80–103 applies to actions against police officers because it is specific, whereas § 13–80–102(a) is a general statute of limitation.  *Donohue v. Hoey*, 109 F. Appx. 340, 369 (10th Cir. 2004) ("a specific statute

preempts a general statute").  Therefore, Colorado's one-year statute of limitations applies to these state claims.  *See id.*; *Handy v. Pascal*, 2011 WL 5176153, at *9–10 (D. Colo. Aug. 29, 2011) (Colo. Rev. Stat. § 13-80-103(1)(c) applies to actions against police officers; thus, plaintiff was required to bring his state-law tort claims within the one year, rather than the two-year limitations period applicable to § 1983 claims), *aff'd and adopted by* 2011 WL 5240435, (D. Colo. Oct. 31, 2011); *McTwigan-Evans v. Spaulding*, 2006 WL 1517735, at *1 (D. Colo. May 30, 2006) (The statute of limitations under Colo. Rev. Stat. § 13-80-103(1)(c) for actions against a police officer is one year.).

Plaintiffs further contend that, even if the Court determines that the one year limit applies, their state law claims should not be dismissed because the cause of action "accrue[s] on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence."  *See* Colo. Rev. Stat. § 13-80-108(1). Here, it is undisputed that Defendant Chester shot Plaintiffs' dog on May 10, 2011. (Doc. # 10 at 13; Doc. # 8 at 6.)  Plaintiff Moore was present when Defendant Chester shot her dog, therefore the dates given in the Complaint make clear that Plaintiffs discovered or reasonably should have discovered their injury on May 10, 2011. *See Aldrich*, 627 F.2d at 1041.  Therefore, the statute of limitations on Plaintiff's state law claims began to run when Defendant Chester shot Plaintiffs' dog.

Plaintiffs argue, without citing to authority, that "some of the conduct that gives rise to [their] claims had not yet occurred."  (Doc. # 10 at 14.)  Plaintiffs offer, by way of example, that "Erie's so called 'investigation' into the shooting and Defendant Chester's

attempt to cover up what happened did not all occur on May 10, 2011 [n]or was it immediately known to Plaintiffs that Chester had previously killed another family dog while employed by Defendant Erie." (Doc. # 10 at 14.)  These examples are not a sufficient factual basis to toll the statute of limitations or establish that the date of Plaintiffs' injury occurred on a day other than May 10, 2011.  A claim for intentional infliction of severe emotional distress accrues "on the date when the injury was incurred and the emotional impact was felt." *Cline v. S. Star Cent. Gas Pipeline, Inc.*, 191 F. App'x 822, 827 (10th Cir. 2006) (quoting *Moore v. Luther ex. rel. Luther*, 291 F. Supp. 2d. 1194, 1199 (D. Kan. 2003)).  Similarly, a negligence cause of action accrues on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence.  *P.R. v. Zavaras*, 49 F. App'x 836, 839 (10th Cir. 2002); *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1481 (D. Colo. 1995).  Here, the alleged facts show that Plaintiffs knew on May 10, 2011 the injury and its cause essential to their claim against Defendant Chester (*i.e.* that Defendant Chester killed their dog).  Thus, the Court concludes that Plaintiffs' claims for intentional infliction of severe emotional distress and willful and wanton negligence should be dismissed as time-barred because Plaintiffs filed them more than one year after May 10, 2011.

## IV. **CONCLUSION**

Based on the foregoing, it is ORDERED that Defendants' Motion to Dismiss

(Doc. # 10) is GRANTED IN PART and DENIED IN PART.  Specifically, it is ORDERED

that Plaintiffs' Second, Third, and Fourth Claims are DISMISSED WITH PREJUDICE.

DATED:  July __19__, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge